UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| CHARLES BAGLEY, : | |
|       Plaintiff, : | |
| : | |
| v. : | Civ. No. 3:06CV00480 (PCD) |
| : | |
| KEVIN SEARLES, TOMMY LEPORE, : | |
| KELVAN KEARSE, TAMMY : | |
| MEDONIS, and MARK FRANCIS, : | |
|       Defendants. : | |

**RULING ON DEFENDANTS' MOTION TO COMPEL
TESTIMONY OF STEPHEN MCELENEY**

On January 8, 2007, Defendants moved to compel Attorney Stephen McEleney's testimony concerning the circumstances surrounding the execution of the Settlement Agreement, Release and Covenant Not to Litigate (the "Settlement Agreement"), entered into by Plaintiff on January 7, 2005. [Doc. No. 27.] For the reasons that follow, this motion is **granted.**

In this action, Plaintiff claims that he was forced to resign from the Windsor Police Department in retaliation for his exercising his First Amendment rights as a union leader to speak out against the police department administration. Defendants assert an affirmative defense that the Plaintiff released them from liability by executing the Settlement Agreement. (See Defs.' Answer and Affirmative Defenses at 2.) Prior to signing the Settlement Agreement, Plaintiff consulted with Attorney Stephen McEleney, who represents Plaintiff's union and was appointed by the union to represent Plaintiff at the disciplinary hearings which proceeded pursuant to the Collective Bargaining Agreement. As part of this representation, Attorney McEleney provided Plaintiff with legal counsel regarding the negotiations and execution of the Settlement Agreement. (See Dep. Tr. of Stephen McEleney at 9:3-10, 23:20-25, 24:5-20.) At his deposition on November 9, 2006, Plaintiff Bagley testified that he was not of sound mind and body when he

signed the Settlement Agreement, and he called Attorney McEleney's advice into question. (See Dep. Tr. of Charles Bagley at 139:6-11, 140:7-10, 146:5-25.) He also waived attorney-client privilege with respect to communications regarding the execution of the Settlement Agreement. (Id. at 137:1-5.) On November 10, 2006, Attorney McEleney was deposed in this matter, and, asserting attorney-client privilege, he refused to answer questions about the circumstances surrounding Plaintiff's signing the Settlement Agreement. Attorney McEleney claimed that the union was his client and that, accordingly, the union, not Mr. Bagley, must waive the privilege before he would discuss any communications or observations he made with respect to Plaintiff. (McEleney Tr. at 24:21-24, 25:1-5, 33:2-5, 39:19-25, 40:1-7.)

Defendants now move pursuant to Fed. R. Civ. P. 45(c)(2)(B) to compel Attorney McEleney's testimony regarding the circumstances of Plaintiff's signing the Settlement Agreement. Defendants maintain that the privilege protecting communications between Plaintiff and Attorney McEleney is held by Plaintiff, not by the union, and that Plaintiff has waived the privilege. Attorney-client privilege attaches to communications: "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his or her capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his or her insistence permanently protected (7) from disclosure by the client or the legal advisor, (8) except if the protection is waived." United States v. Int'l Bhd. of Teamsters, 119 F.3d 210, 214 (2d Cir. 1997) (internal citations omitted). The attorney-client privilege "serves the function of promoting full and frank communications between attorneys and their clients. It thereby encourages observance of the law and aids in the administration of justice." Id. (quoting Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343 (1985)). In this case, the

attorney-client privilege covers the communications between Mr. Bagley and Attorney McEleney, separate from and irrelevant to their respective relationships with the union. Although the union retained and compensated Attorney McEleney, McEleney represented Mr. Bagley during his disciplinary proceedings and through the Settlement Agreement negotiations. (McEleney Tr. at 49:19-24.)  McEleney and Bagley engaged in communications during the course of Bagley's negotiating and signing the Settlement Agreement which constituted legal advice made in confidence, see DiStefano v. Milardo, 276 Conn. 416, 422, 886 A.2d 415, 419 (2005) (quoting Somma v. Gracey,15 Conn. App. 371, 379, 544 A.2d 668 (1988)) ("An attorney-client relationship is established when the advice and assistance of the attorney is sought and received in matters pertinent to his profession."), and, according to Defendants, there is no evidence suggesting that the union sought any advice or made any communications with Attorney McEleney regarding Bagley's signing the Settlement Agreement.  (Defs.' Mem. in Supp. of Mot. to Compel at 6.  See also McEleney Tr. at 21:24-25, 22:1-3, 49:19-24.)  Attorney McEleney therefore had a representative relationship with Bagley, and it is to this representative relationship that the attorney-client privilege applied.  See Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co., 249 Conn. 36, 52-53 (1999) (holding that when an insurer retains an attorney in order to defend a suit against an insured, "the attorney's only allegiance is to the client, the insured"); Higgins v. Karp, 239 Conn. 802, 810 (1997) ("even when an attorney is compensated or expects to be compensated by a liability insurer, her duty of loyalty and representation nonetheless remains exclusively with the insured."); Petrowski v. Norwich Free Acad., 2 Conn. App. 551, 563, 481 A.2d 1096, 1104 (1984), rev'd on other grounds, 199 Conn. 231, 506 A.2d 139 (1986) ("The test of the attorney-client relationship is not who pays the bills, but to whom allegiance is

owed."); Novella v. Hartford Accident & Indem. Co., 163 Conn. 552, 573, 316 A.2d 394 (1972). But see Peterson v. Kennedy, 771 F.2d 1244, 1248-49 (9th Cir. 1985) (a union member and his union-appointed attorney do not have an attorney-client relationship "in the ordinary sense" in that the attorney cannot be liable to the union member for legal malpractice or breach of fair representation claims.). Accordingly, insofar as a privilege attaches to the legal advice provided to Mr. Bagley surrounding the Settlement Agreement, that privilege is held by Mr. Bagley, not by the union.

As this Court concluded in its January 8, 2007 Ruling on Defendants' Motion to Compel Testimony of Charles Bagley [Doc. No. 30] ("January 8th Ruling"), Plaintiff Bagley is deemed to have waived his attorney-client privilege protecting confidential communications about the Settlement Agreement because he raised Attorney McEleney's advice and the circumstances surrounding the execution of the Settlement Agreement as issues in this action. (January 8th Ruling at 2; Bagley Tr. at 136:16-25, 137:1-10, 140:7-10, 146:5-25, 147:1-16.) Plaintiff maintains that he entered the Settlement Agreement under duress, thereby raising the issues of his state of mind at the time of the execution of the Settlement Agreement and the information received from Attorney McEleney at that time. Plaintiff has therefore waived his attorney-client privilege insofar as conversations with Attorney Mceleney are germane to Plaintiff's claim regarding the enforceability of the Settlement Agreement. See Boudreau v. Gonzalez, No. 3:04cv1471 (PCD), 2006 WL 3462655, *2 (D. Conn. Nov. 29, 2006) (citing McLaughlin v. Freedom of Info. Comm'n, 83 Conn. App. 190, 195, 850 A.2d 254 (2004)) (an exception exists to the attorney-client privilege "when a party specifically pleads reliance on an attorney's advice as an element of a claim or defense, voluntarily testifies regarding portions of the attorney-client

communication, or specifically places at issue, in some other manner, the attorney-client relationship."); Metro. Life Ins. Co. v. Aetna Cas. & Sur. Co., 249 Conn. at 53; In re Von Bulow, 828 F.2d 94, 103 (2d Cir. 1987).   Accordingly, Attorney McEleney cannot at this time assert attorney-client privilege to assert vis-a-vis the circumstances surrounding the Settlement Agreement.  Defendants' Motion to Compel Testimony of Stephen McEleney is hereby **granted.**

    SO ORDERED.

    Dated at New Haven, Connecticut, on this  18th  day of January, 2007.

                                                          /s/
                                            Peter C. Dorsey
                                            United States District Judge